UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JANE DOE,

              Plaintiff,

    v.

COUNTY OF SOLANO, SOLANO
SHERIFF'S OFFICE, JOHN B.
ROBERTSON (in his individual and
official capacities), THOMAS A.
FERRARA (in his individual and
official capacities), BRADLEY
DEWALL (in his individual and
official capacities), and
JACKSON HARRIS (in his
individual and official
capacities),

              Defendants.

No. 2:25-cv-03155 WBS AC

MEMORANDUM AND ORDER RE:
DEFENDANTS' MOTION TO DISMISS

----oo0oo----

        This action arises out of events of alleged violent sexual assault within the workplace context.

        On or about October 4, 2021, plaintiff Jane Doe commenced her employment as a Sheriff's Deputy with the County of

Solano ("the County") and the Solano County Sheriff's Office ("the Office").  (Docket No. 1 (Compl.) at 8.)  Following her initial orientation, plaintiff entered a "pre-field training period" as a bailiff at a local courthouse.  (Id.)  During that period, plaintiff was prohibited from leaving the courthouse premises without a senior or lateral deputy escort pursuant to the County's and the Office's policies.  (Id.)

Senior Deputy John B. Robertson "positioned himself as the primary person to escort" plaintiff from the courthouse "for her breaks and meals."  (Id. at 9.)  He further functioned as plaintiff's "supervisor and de facto supervisor through multiple bases of authority."  (Id.)

Around November 2021, Robertson began to drastically escalate his conduct as to plaintiff.  Among other things, he invited plaintiff to his home; insisted on paying for plaintiff's meals when alone with her; made a so-called "joke" that he would "rape" plaintiff's "gay friend"; and stated that he was "the only one" plaintiff could trust regarding her workplace frustrations and directed her to not speak to other deputies regarding such frustrations.  (Id. at 10.)

On approximately August 14, 2022, when plaintiff was visiting Robertson at his home upon his insistence, Robertson "physically assaulted and raped her" despite plaintiff repeatedly "refus[ing] both verbally and by her attempts to create physical distance" to have sexual intercourse with Robertson.  (Id. at 11.)  Over the following months, Robertson raped plaintiff "no less than eight . . . more times, with his last, most violent

2

rape" involving "strangulation" that caused plaintiff to believe that "she was going to die."  (Id. at 11-12.)

Plaintiff reported Robertson's assaults to the Vacaville Police Department on December 18, 2024.  (Id. at 13.) The following day, Robertson was placed on administrative leave. (Id.)  Plaintiff claims that her reporting of Robertson's conduct spurred defendants to engage in a "pattern of retaliatory conduct" described below.  (Id. at 13.)

First, plaintiff alleges that County Sheriff Thomas A. Ferrara; County Undersheriff Bradley Dewall; Jackson Harris, a Captain in the County's Sheriff's Office; the County; and the Office (together, the "Entity Defendants") conducted an investigation biased heavily in favor of Robertson.  (Id. at 15.) To support this allegation, plaintiff states that the third-party consultant the Entity Defendants hired to supplement their investigation declined to interview plaintiff until she "repeatedly insisted that she be interviewed"; and the Entity Defendants permitted Robertson to contact witnesses, bullied plaintiff or alternatively avoided her, and shared confidential details about the investigation throughout the Office.  (Id.)

Second, on or about March 4, 2025, plaintiff was informed by defendants Dewall and Harris, with the approval of Ferrara, that Robertson was being returned to full duty because of the investigator's conclusion that Robertson would not be fired; Robertson resumed such duty on March 10, 2025.  (Id. at 16.)  However, the investigator separately informed plaintiff that he never reached that conclusion because his investigation

3

was still ongoing.  (Id.)  Around this time, the Entity Defendants also purported to impose a "stay away" order between Robertson and plaintiff but nevertheless assigned plaintiff and Robertson to "overlapping shifts on the same beat."  (Id. at 16.) Although Robertson violated the order at least five times, plaintiff alleges that the Entity Defendants did not take any disciplinary action against him for having done so.  (Id. at 16-17.)

Third, two months after plaintiff emailed the Entity Defendants (to no response) documenting the retaliation she allegedly experienced at their behest, those same defendants served her with a "gag order" directing her to not discuss the events giving rise to the investigation with anyone except an Internal Affairs Sergeant, who was later removed from the investigation due to a conflict-of-interest in favor of Robertson.  (Id. at 18-19.)

Plaintiff filed this action shortly thereafter, in which she brings ten claims.  Relevant here, she brings two claims under 42 U.S.C. § 1983 ("Section 1983"):  one against the Entity Defendants in their individual and official capacities for retaliating against her for engaging in constitutionally protected speech, and the other against the County, the Office, and Ferrara and Dewall pursuant to Monell v. Dep't of Soc. Svcs., 436 U.S. 658 (1978).

Defendants filed the instant motion to dismiss, in which they seek to dismiss as against Harris, Dewall, and Ferrara, and argue that plaintiff has not adequately pled her

First Amendment and <u>Monell</u> claims.   (See Docket No. 18-1.)

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal when the plaintiff's complaint fails to state a claim upon which relief can be granted.  <u>See</u> Fed. R. Civ. P. 12(b)(6). The inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the complaint has stated "a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u>

I.   First Amendment Retaliation

To properly plead a First Amendment retaliation claim, plaintiff must demonstrate that she "spoke on a matter of public concern"; "spoke as a private citizen," as opposed to a "public employee"; and that her "protected speech was a substantial or motivating factor in the adverse employment action."  <u>Eng v. Cooley</u>, 552 F.3d 1062, 1070 (9th Cir. 2009).

a.   Matter of Public Concern

"Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'"  <u>Johnson v. Multnomah Cnty., Or.</u>, 48 F.3d 420, 422 (9th Cir. 1995) (quoting <u>Connick v. Myers</u>, 416 U.S. 138, 146 (1983)).  As such, "speech that concerns 'issues about which information is needed or appropriate to enable the members of society' to make informed decisions about the operation of their government merits the

5

highest degree of [F]irst [A]mendment protection." McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir. 1983) (quoting Thornhill v. Alabama, 310 U.S. 88, 102 (1940)). Conversely, "speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies" is generally not of public concern. Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003) (quotations omitted).

Plaintiff alleges that she reported Robertson's behavior to the Vacaville Police Department, the County, and the Office, and that her reports addressed "law enforcement misconduct, sexual violence by peace officers, workplace retaliation, and sexual harassment [and] discrimination." (See Compl. at 13, 26.) To this end, the Ninth Circuit has held that the "reporting . . . [of] instances of possible . . . discrimination[] or misconduct" by public safety officers "and following up on those complaints" is "clearly a matter of public concern." See Robinson v. York, 566 F.3d 817, 822 (9th Cir. 2009) (quotations omitted).

Indeed, whether a police department "treats complaints of misconduct seriously or fails to follow[-]up is . . . a matter of 'relevance to the public's evaluation of the performance of governmental agencies' and consequently independently a matter of public concern." Id. at 823 (quoting Coszalter, 320 F.3d at 973). Specifically, the ability to discern whether a police force competently handles internal allegations of violent sexual assault is undoubtedly a matter of concern to the public that may

report similar conduct to that same organization.  Cf. id.

Accordingly, plaintiff has satisfied her burden of demonstrating that she spoke on a matter of public concern.

b.    Private Citizen or Public Employee

"The Supreme Court has observed that the inquiry into whether employee speech is pursuant to employment duties is a practical one."  Marable v. Nitchman, 511 F.3d 924, 932 (9th Cir. 2007).  Under this "practical" inquiry, id., "[s]tatements are made in the speaker's capacity as citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform," Eng, 552 F.3d at 1071.

"[P]articularly in a highly hierarchical employment setting such as law enforcement, whether or not the employee confined h[er] communications to h[er] chain of command is a relevant, if not necessarily dispositive, factor in determining whether [s]he spoke pursuant to his official duties."  Dahlia v. Rodriguez, 735 F.3d 1060, 1074 (9th Cir. 2013).  Correspondingly, "[w]hen a public employee communicates with individuals or entities outside of h[er] chain of command, it is unlikely that [s]he is speaking pursuant to h[er] duties."  Id.

Plaintiff alleges that, at minimum, she reported Robertson's conduct to the Vacaville Police Department, an external entity necessarily sitting "outside of h[er] chain of command."  See id.  Further, plaintiff's complaints concerned departmental "abuse," making it "unlikely that such complaints c[ould] reasonably be classified as being within the job duties

7

of an average public employee."  See id. at 1075.

Plaintiff has thus satisfied her burden of showing that she spoke as a private citizen.

   c.   Substantial or Motivating Factor Behind Adverse Employment Action

To constitute an adverse employment action, a government act of retaliation must be "reasonably likely to deter employees from engaging in protected activity."  Dahlia, 735 F.3d at 1078.  "Depending on the circumstances, even minor acts of retaliation can infringe on an employee's First Amendment rights."  Coszalter, 320 F.3d at 975.

Under this inquiry, "some, perhaps all, of the following acts, considered individually, were adverse employment actions for purposes of plaintiff['s] First Amendment retaliation suit," id. at 976:  (1) disclosing information regarding the confidential sexual assault investigation to other employees (Compl. at 15), (2) bullying and alternatively ignoring plaintiff (id.), (3) returning Robertson to duty after the investigation and assigning him to "overlapping shifts on the same beat" as plaintiff (id. at 16), (4) refusing to enforce the "stay away" order directing Robertson to avoid plaintiff (id. at 16-17), and (5) conspicuously refusing to identify plaintiff (and plaintiff alone) by her official title at a County event (id. at 18).  "When taken together, it is clear that these acts amounted to a severe and sustained campaign of employer retaliation that was reasonably likely to deter plaintiff[] from engaging in speech protected under the First Amendment."  Coszalter, 320 F.3d at

8

977.  Accordingly, plaintiff has adequately established that she was subject to adverse employment actions.

Plaintiff must also demonstrate that "retaliation was a substantial or motivating factor behind . . . defendant[s'] adverse employment actions," which she can do in at least "three ways."  Id.  "First," she "can introduce evidence regarding the proximity in time between the protected action and the allegedly retaliatory employment decision, from which a jury logically could infer that the plaintiff was [harmed] in retaliation for h[er] speech."  Id. (citation modified).  "Second," she "can introduce evidence that h[er] employer expressed opposition to h[er] speech, either to h[er] or to others."  Id. (quotations omitted).  "Third," she "can introduce evidence that h[er] employer's proffered explanations for the adverse employment action were false and pre-textual."  Id. (quotations omitted).

Plaintiff has sufficiently alleged retaliation was a substantial or motivating factor under the first approach. Plaintiff initially complained of Robertson's conduct in December 2024 (Compl. at 17); she alleges that defendants engaged in the above-mentioned retaliatory conduct in February 2025 (id. at 18), April 2025 (id. at 18-19), and June 2025 (id. at 27).  The minimal amount of time elapsed between plaintiff's complaint and defendants' alleged conduct "easily . . . support[s] an inference of retaliation."  See Coszalter, 320 F.3d at 977 (three-to-eight-month time range raises inference of retaliation).

Accordingly, plaintiff has adequately alleged a First

Amendment retaliation claim.[1]

II.  Monell Claim

Plaintiff alleges a Monell claim against the County and the Office under failure-to-train and ratification theories.[2] Because plaintiff adequately alleges a Monell claim against the County and the Office under a failure-to-train theory, the court need not address the viability of plaintiff's ratification theory.  See, e.g., Thomas v. Stanislaus Cnty., No. 2:25-cv-02113 WBS CSK, 2026 WL 35695, at *3 (E.D. Cal. Jan. 6, 2026).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983," but "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  Connick v. Thompson, 563 U.S. 51, 61 (2011).  To state a claim for failure to train, a plaintiff must show deliberate indifference on the part of the County in adequately training its law

---

[1]   It may be the case that defendants have an "adequate justification" for engaging in their allegedly retaliatory actions, or that they would have taken such actions "even in the absence of . . . [plaintiff's] protected conduct.  Eng, 552 F.3d at 1071-72.  However, at the pleading stage, defendants have not yet had an opportunity to present such justification.

[2]   Plaintiff also alleges this claim against Ferrara and Dewall.  However, "a Monell claim cannot properly be brought against individual defendants."  Lopez v. Cnty. of San Bernardino, No. SA 19:cv-1436 JVS ADSx, 2020 WL 2027597, at *5 (C.D. Cal. Feb. 13, 2020) (citing Guillory v. Cty. of Orange, 731 F.2d 1379, 1382 (9th Cir. 1984)).  Accordingly, the court will dismiss plaintiff's Monell claim against Ferrara and Dewall.

10

enforcement officers, and that the inadequate training actually caused a deprivation of her constitutional rights. Merritt v. Cnty. of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989).

Plaintiff alleges that the County and the Office failed to adequately train its officers regarding:

> (1) prohibition on sexual harassment and assault of subordinate employees; (2) appropriate boundaries between senior deputies and probationary deputies; (3) mandatory reporting requirements under [state law]; (4) protection of employees who report sexual misconduct; (5) enforcement of 'stay away' orders and workplace safety measures; and (6) the prohibition on retaliation against employees who exercise First Amendment rights to report misconduct.

(Compl. at 29.)

She thus "plausibly allege[s]" that the County and the Office failed to train its officers regarding workplace sexual misconduct and that "this failure to train resulted in" the deprivation of her First Amendment rights. See Estate of Chivrell, 695 F. Supp. 3d at 1238.

Plaintiff further alleges that, based on the County and the Office's checkered history of inadequately handling multiple similar complaints of workplace sexual misconduct (see Compl. at 30), the County's and the Office's failure to implement such policies amounted to deliberate indifference to constitutional rights. See Estate of Chivrell, 695 F. Supp. 3d at 1238. This is sufficient to state a Monell claim under a failure-to-train

11

theory at the pleading stage.

III. Individual Defendants

Defendants argue that plaintiff's First Amendment claim must be dismissed against Harris, Dewall, and Ferrara in their individual capacities because the complaint contains insufficient allegations against them, individually.  (See Docket No. 18-1 at 3-5.)  Defendants are correct that "[l]iability under [S]ection 1983 arises only upon a showing of personal participation by [each] defendant."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Beginning with Harris, defendants argue in their motion to dismiss that Harris, and only Harris, is entitled to qualified immunity.   (See Docket No. 18-1 at 4.)  The Ninth Circuit has instructed that, "[o]nce the defense of qualified immunity is raised by the defendant, the plaintiff bears the burden of showing that the rights allegedly violated were 'clearly established.'"  LSO, Ltd. v. Stroh, 205 F.3d 1146, 1157 (9th Cir. 2000).

Plaintiff's counsel did not address defendants' qualified immunity argument as to Harris either in their papers or at oral argument upon being prompted by the court.  At oral argument, the court asked plaintiff's counsel to define for purposes of a qualified immunity analysis the "clearly established" right that defendants allegedly violated. Plaintiff's counsel was unable to do so.  Assuming that the right at issue is the right to not be in forced proximity to an individual after complaining of that individual's sexually

inappropriate behavior, plaintiff's counsel has been unable to provide any authority clearly establishing such right. Accordingly, this action must be dismissed as against Harris on qualified immunity grounds.

As for Ferrara, plaintiff alleges that he issued an approval of Robertson's return to full duty while the investigation into his conduct was still pending.  (Id. at 27.) She further alleges that he, as County Sheriff, contributed to the enactment of the "gag order" against her and ratified subordinates' retaliatory conduct against her.  (Id. at 21.) These individualized allegations suffice.

Lastly, regarding Dewall, plaintiff claims that he informed her that Robertson was being returned to full duty because the investigation into his behavior resulted in a conclusion that he would not be terminated, notwithstanding the investigator confirming to plaintiff that he never reached such a conclusion because his investigation was ongoing.  (Id. at 16.) Plaintiff also alleges that he failed to introduce her by her official title at a County event, despite introducing other individuals by their official titles at the same event, shortly after she reported Robertson's conduct.  (Id. at 18.)  While the court does not doubt that Dewall's behavior upset plaintiff, it did not rise to the level of a constitutional violation. Accordingly, the court will dismiss Dewall as a defendant.

IT IS THEREFORE ORDERED that defendants' motion to dismiss (Docket No. 18) be, and the same hereby is, GRANTED in part and DENIED in part as follows:

13

This action is DISMISSED as against defendants Dewall and Harris;

Plaintiff's third cause of action is DISMISSED as against defendant Ferrara; and

Defendants' motion to dismiss is DENIED as to all other claims against the remaining defendants.

IT IS SO ORDERED.

Dated:   February 18, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE